IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FSA GROUP, INC., | : | CIVIL ACTION |
| FISHER MANAGEMENT COMPANY, | : | |
| AND J. HERBERT FISHER, JR. | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | NO. 05-809 |
| | : | |
| AMERADA HESS CORPORATION | : | |
| Defendant | : | |

Gene E.K. Pratter, J.                                                                April 26, 2006

**MEMORANDUM AND ORDER**

Fourteen months after commencing a civil action to recover a variety of damages because of environmental damage to its premises allegedly caused by Amerada Hess Corporation ("Hess"), Plaintiff FSA Group, together with its two co-plaintiffs (jointly "FSA"), seeks leave to amend its prior pleadings to perfect a jury trial demand. Familiar legal principles, together with no small measure of concern about the substance of the movants' submission, prompt the Court's invocation of the admittedly hackneyed phrase "Too little, too late" as being appropriate for the situation presently before the Court. For the reasons set forth below, FSA's Motion For Trial By Jury will be denied.

Factual and Procedural Background

FSA, then represented by the law firm of Notturno & Gass, commenced suit against Hess by the filing of a writ of summons dated January 12, 2005 in the Lancaster County Court of Common Pleas. The writ and the letter transmitting the writ to Hess, as well as the Lancaster County Court of Common Pleas docket, reflect that Tracy Thomas Cadzow, Esq., of the Notturno firm was serving as FSA's counsel. Approximately one month later, FSA filed a

complaint in the Lancaster County action. The complaint was signed by Tracy Thomas Cadzow, Esq. The name of Kenneth C. Notturno, Esq. also was typed on the pleading as one of the counsel for FSA. Neither the writ of summons nor the subsequent complaint contains a jury trial demand.

In the complaint, FSA alleges that the discovery of environmental contaminants from underground storage tanks at a nearby Hess service station caused a prospective purchaser of FSA's shopping center to terminate an agreement to buy the property. FSA claims that Hess is liable for FSA's various resulting losses pursuant to the Pennsylvania Storage Tank and Spill Prevention Act, as well as under common law claims for negligence, trespass and nuisance.

All Plaintiffs are citizens of the Commonwealth of Pennsylvania; Hess is a citizen of Delaware and New York; and the amount in controversy exceeds $75,000. Thus, on February 22, 2005, Hess timely removed the case to federal court on the basis of diversity jurisdiction. Hess then answered the complaint on March 16, 2005. The federal court docket shows that Kenneth Notturno and Tracy Thomas Cadzow entered their appearances for the FSA Plaintiffs on April 22, 2005, about two months after the removal. All the parties' counsel then participated in a pretrial Rule 16 conference with the Court on April 22, 2005,[1] and a scheduling order thereafter was issued. According to Hess's counsel, before and during the April 2005 conference, FSA's counsel, Kenneth Notturno, acknowledged that this case was a non-jury case, and the parties and the Court agreed during the conference that the suit would be resolved in a bench trial. The Scheduling Order issued by the Court on May 19, 2005 specifically reflects that the case is a non-

---

[1] As of the time of this initial pretrial conference, this case had been assigned to the Honorable Berle M. Schiller. On December 21, 2005, with the entry of appearance of new counsel, the case was randomly reassigned to the docket of this Court.

jury case and sets a bench trial date of January 9, 2006.  May 19, 2005 Order, ¶ 11; Barnett Affidavit ¶¶ 2 and 3.

Thereafter, allegedly prompted by events discussed in greater detail below, FSA eventually secured new counsel.  On December 16, 2005 FSA's new attorneys entered their appearance in this case.[2]  The appearance of new counsel prompted an appropriate recusal by the then-presiding Court, and the case was reassigned to this Court.  A status conference with the new presiding Court occurred on January 4, 2006.  During that status conference the Court and counsel again made specific reference to the case being non-jury.  Another Scheduling Order issued on January 6, 2006, and it, too, expressly twice referenced the case as non-jury.  At no time during the January 4, 2006 conference with the Court or in response to the issuance of the January 4, 2006 Scheduling Order did any of FSA's counsel[3] either object to the designation of the case as non-jury or give any indication whatsoever to either the Court or opposing counsel of any intention to try to avoid the consequences of the non-jury designation.

Nevertheless, on March 13, 2006 FSA filed the now pending Motion for Jury Trial.  Hess opposes the relief requested by FSA.

Discussion

FSA's justification for its Motion is to blame its prior counsel, Kenneth Notturno, who, ostensibly through inadvertence and oversight, "[w]hen [he] filed the complaint...did not mark it

---

[2] Somewhat curiously in view of the statements made in the Affidavit of Kenneth C. Notturno, Esquire, that has been submitted along with the subject Motion, and in arguments being made here, according to the docket in this case, as of the date of this Memorandum and Order FSA's original counsel have never withdrawn their appearances on behalf of FSA.

[3] Only the newly appearing counsel, and not the original FSA lawyers, attended the conference on behalf of the FSA parties.

with the appropriate notation to have a jury trial," even though Mr. Notturno allegedly "intended to but did not demand a jury as of right." FSA Mem. of Law at 2. Notturno Affidavit ¶¶ 3, 12. To give credence to their prayer for relief from their counsel's supposed neglect, the FSA plaintiffs submit the 12-paragraph affidavit of Mr. Notturno who goes to remarkable lengths to draw onto himself the blame for the absence of a jury demand and the failure of FSA to request permission to make a late jury demand prior to the March 13, 2006 motion filed by FSA's new counsel. Notturno Affidavit ¶¶ 3, 12. In addition to the Notturno Affidavit, FSA also hastens to argue that no prejudice would befall Hess by excusing FSA's delay in requesting a jury because, according to FSA and not precisely disputed by Hess, discovery activity has been very slow to progress in the case, and also because the reassignment of the case to this Court has led to issuance of a new scheduling order and a new trial date some eight months hence.

Federal Rule of Civil Procedure 38(b) provides that "[a]ny party may demand a trial by jury on any issue triable of right by a jury" by filing and serving such a demand "not later than 10 days after the service of the last pleading direct to such issue."[4] Failure to make such a demand constitutes a waiver of the right to a jury trial. Fed. R. Civ. P. 38(d). If a demand is untimely made, however, Rule 39(b) provides that "the court in its discretion upon motion may order a trial by jury of any or all issues."

The Third Circuit Court of Appeals directs a lower court considering whether to use the discretion to grant an untimely motion for a jury trial under Rule 39(b) to weigh the following

---

[4] Because Hess filed its answer on March 16, 2005, but served the answer by mail, Hess acknowledges that FSA had until April 4, 2005 to file a jury trial demand under Rule 38(b). The FSA motion was not filed until mid-March 2006, some eleven (11) months after it was due by Rule.

factors: (1) whether the issues are suitable for a jury; (2) whether granting the motion would disrupt the schedule of the court or the adverse party; (3) whether any prejudice would result to the adverse party; (4) how long the party delayed in bringing the motion; and (5) the reasons for the failure to file a timely demand.  S.E.C. v. Infinity Group Co., 212 F.3d 180, 195-96 (3d Cir. 2000).  FSA argues that its request for a jury trial should be granted because the factors from Infinity Group weigh in its favor.  Hess argues they do not.

FSA asserts that this case is suitable for a trial by jury because the central issues in the case – whether the Hess gas station contaminated the shopping center and the resulting amount of damages – are factual and not legal.  FSA argues that this case is no more complex than other tort cases that juries hear.  Furthermore, asserts FSA, the Storage Tank and Spill Prevention Act "greatly simplifies" the jury's task by presuming that the defendant is liable, which essentially makes this a case about damages.  Plaintiffs assert that the use of special interrogatories will remove any doubt that the jury has competently and properly evaluated the amount of damages allegedly caused by Hess.

FSA argues that the second and third Infinity Group factors weigh in favor of granting its motion because several months remain before the expiration of newly set discovery deadline and trial, and, given the extended deadlines, Hess will not suffer any prejudice if the case is newly designated as one for a jury.  FSA asserts that, up to the time of the filing of the motion, only paper discovery has occurred, and depositions have not yet been taken.  FSA also argues that because the final discovery deadline as set out in the January 4, 2006 Scheduling Order now is June 16, 2006, and the trial pool date is November 6, 2006, granting a jury trial will not alter discovery.  Thus, according to FSA, any prejudice that Hess might suffer – such as a forced

change in trial strategy -- could be planned and budgeted for accordingly.

As indicated above, FSA, in support of its Motion, attached the affidavit of Kenneth Notturno, FSA's original attorney. Painting what might be interpreted as a virtual bull's eye on his back,[5] Mr. Notturno avers in his affidavit that he intended to request a jury, but inadvertently failed to do so. Notturno Affdavit ¶¶ 3, 5, 12. Mr. Notturno represents that in late April 2005 one of his law partners left the firm, creating a "very large strain" on Mr. Notturno's practice, and, shortly thereafter, the manager of Mr. Notturno's affiliated title insurance companies left, resulting in "significant and unexpected additional work" for Mr. Notturno. Notturno Affidavit ¶ 6. From spring until summer 2005 Mr. Notturno "spent more and more time dealing with issues arising from the departure of [his partner and manager], the closing and winding up of [his] law firm and title insurance companies, and the sale of the building where [his] businesses were located." Notturno Affidavit ¶ 7. Also during this time period Mr. Notturno says that he was engaging in negotiations to join the law firm of McNees Wallace & Nurick LLC ("McNees"). Notturno Affidavit ¶ 8.

During his negotiations with McNees (which he did not join until August 2005 by which point the case had been pending for about eight months), Mr. Notturno allegedly learned of a conflict of interest that he claims would prevent him from continuing as counsel for FSA if he joined McNees. Mr. Notturno, apparently believing that the discovered conflict would

---

[5]The Court hastens to observe that the Court is decidedly not offering any view with respect to the merits - - or lack thereof - - of a possible professional liability claim. The Court is not privy to the extent, if any, FSA was aware and amenable to the omission of a jury trial demand. Moreover, it is quite unclear conceptually what damage or prejudice, if any at all, could flow from having a bench trial as opposed to a jury trial in this case. Stated differently, it would be curious indeed for the Court to suggest that a litigant in FSA's position is prejudiced by a non-jury trial as opposed to a jury trial.

6

necessitate his withdrawal as counsel for FSA if he joined McNees and thus effectively prohibited any "proactive activity" by him on behalf of FSA, "stopped the active prosecution of this case for plaintiffs and against defendant." Notturno Affidavit ¶ 10. He states that resolving the conflict became his chief focus vis à vis this case. Mr. Notturno further states that in August 2005, in connection with efforts to locate new counsel to represent FSA in this case, he came "into contact" with [FSA's] present counsel. Notturno Affidavit ¶ 11. Indeed, by letter dated September 7, 2005 Mr. Notturno informed the then-presiding Court of his recent move to the McNees firm, of his learning of the alleged conflict, of his "negotiating" with present counsel "to take over the case" and of the then-proposed new counsel being "in the process of finalizing the legal arrangements" with the client in order to become FSA's counsel. While Mr. Notturno's September 7 letter makes reference to an expected need for some scheduling indulgence, no mention whatsoever is made of any issue with regard to the non-jury status of the case.

The ensuing three months were marked not only by an absence of "proactive activity" by anyone in the case but by virtually complete silence. By December 14, 2005 the Court had apparently heard nothing more from either Mr. Notturno or proposed replacement counsel, and an order issued on that date requiring Mr. Notturno to inform the Court by December 16, 2005 of the identity of new counsel. New counsel then entered an appearance on December 16, 2005; however, as noted above, according to the Court's docket neither Mr. Notturno nor Tracy Thomas Cadzow have - - to this day - - yet withdrawn their appearance as FSA's counsel.

Hess greets the FSA Motion in general, and Mr. Notturno's affidavit in particular, with undisguised cynicism. It would be an understatement to observe that Hess doubts the FSA assertion that the late effort to make a jury trial demand was caused by inadvertent neglect by

7

counsel.  Beyond the hyperbole, Hess does suggest that consideration of all the Infinity Group factors weighs against the Court exercising its discretion to grant the jury demand motion.

With respect to the first factor, Hess suggests that the "technical and complex financial testimony" expected in this case makes it "ill-suited for a jury trial."  Hess Mem. of Law at 8.  Hess also suggests that a jury (but, apparently, not the Court) should be spared the likelihood that many witnesses will necessarily appear via videotaped recordings or transcripts because they are outside the subpoena power of this Court.  The Court cautions Hess against underestimating a jury's ability to grapple with complicated concepts and to take the measure of witnesses appearing on video tape.  Presentation of complicated and/or arguably tedious theories or evidence to either a jury or a judge sitting as the fact-finder both challenge an advocate's skill in boiling down the issues and evidence at hand.  Thus, while the Court appreciates what Hess is attempting to argue on this point, the Court sees this first Infinity Group factor as favoring neither FSA nor Hess.  Consequently, by interpreting Infinity Group, and the citation to the Court of Appeal's earlier case of William Goldman Theatres, Inc. v. Kirkpatrick, 154 F.2d 66 (3rd Cir. 1946), as obligating the proponent of a late-filed jury trial demand to make an adequate showing that the issues involved are particularly suitable for a jury, this first factor does not operate in FSA's favor.

Disruption to the Court's schedule is the second Infinity Group factor.  Currently, pursuant to the January 4 Scheduling Order, as a result of the specific scheduling input of the present counsel, this case is set to be added to the Court's trial pool for November 6, 2006,[6] and

---

[6]The January 4 Scheduling Order calls for fact discovery to be concluded by June 16, 2006, and expert witness discovery is to be completed by August 18, 2006.  While the Order calls for dispositive motions and/or Daubert motions to be filed by September 18, 2006, because

8

it is expressly noted to be a non-jury trial. Previously, the parties had been operating under a scheduling order for a non-jury trial set to start January 9, 2006 at 8:30 a.m. Only the December 2005 appearance of new counsel, and the resulting change in presiding judges, caused the issuance of the new scheduling order and the setting of the new trial date. The new date was set specifically with the expectation of somewhat greater scheduling flexibility - - not to mention somewhat lesser final pre-trial obligations for the Court and counsel, and somewhat more time-consuming post-trial obligations for both - - that comes with a non-jury trial.[7] While it may well be tempting to dismiss the possible switch from non-jury to jury as a mere scheduling trade off from the Court's perspective, that conceptual convenience would not be entirely accurate and would not fully account for the undeniable differences in the Court being able to more confidently set a date certain for the commencement and continuation of a non-jury case, receiving evidence in a somewhat less formal and less time-consuming manner in such cases, and the like. These features are not unimportant to the Court and may be considered as beneficial to the parties, their counsel and their witnesses.

Another consideration is the possible prejudice a change to a jury trial designation at this time may visit upon Hess. FSA breezily dismisses the potential for prejudice by trying to

---

this is a non-jury case, it is entirely possible that the case can and will be ready to be tried considerably earlier than the current pool date. Indeed, the Court's practice would be to assess the case's trial-readiness soon after the discovery deadline. Thus, it is possible that this case could be reset for trial much earlier in the fall.

[7]For example, the Court's pre-trial orders for non-jury cases do not require the parties to prepare and submit voir dire-related materials or proposed jury instructions, but do call for proposed findings of fact and conclusions of law. Post-trial submissions in non-jury cases typically include preparation of additional proposed findings and conclusions based upon review of the trial transcript.

capitalize on the fact that the parties have heretofore been dilatory with respect to discovery and, due to the change in representation and protestations of a need for time to prepare the case, the resetting of a future trial pool date for November.[8]  FSA concludes "there is more than ample time for [Hess] to prepare accordingly", FSA Mem. of Law at 8, and posits that "it would be unfair to penalize plaintiffs where there is no harm to defendant." Id.

Hess takes issue with FSA's dismissive attitude and claims it will be prejudiced if the motion is granted.  Hess claims that it has already "made a number of strategic decisions based on the assumption that this case will be tried [non-jury] and it will be prejudiced if it is forced to rethink those decisions." Hess Mem. of Law at 11.  Without explaining how the jury/non-jury issue is implicated, Hess also claims potential prejudice "because key factual witnesses are outside the trial subpoena power of this Court."  Finally, Hess suggests it will be prejudiced by having to incur greater trial-related expense to prepare "expensive demonstrative aides to simplify the technical and complex financial testimony for jurors."[9]  Id.

To be sure, these matters have been recognized as the type of prejudice that has been considered as meriting credence in the context of a delayed jury trial request.  See, e.g., United States v. Unum, Inc., 658 F.2d 300, 303 (5th Cir. 1981); Katzenmoyer v. City of Reading, No. 00-5574, 2001 U.S. Dist. LEXIS 15930, at *3-5 (E.D. Pa. Aug. 6, 2001); Hare v. H & R Indus., No. 00-4533, 2001 U.S. Dist. LEXIS 8661, at *3 n.2  (E.D. Pa. June 26, 2001); McNic Oil & Gas Co. v. Ibex Res. Co., 23 F. Supp. 2d 729, 740 (E.D. Mich. 1998), (discussing "substantial

---

[8] See footnote 5, supra.

[9] The Court again cautions the parties that, like a jury, the Court, too, can benefit from well-done demonstrative exhibits and the like, especially as to highly technical scientific or financial issues.

hardship" to party if trial were held in forum where many witnesses could not be compelled to attend trial).  Even if the prejudice outlined by Hess is not viewed as severe, or as so grave as to risk fundamental unfairness, FSA's argument that the Court should give greater weight to FSA's supposed hardship in being denied a jury is not appropriate here.  Indeed, not only is prejudice - - to either party - - only one consideration, the total absence of prejudice to the non-moving party has not impeded the denial of a motion such as FSA's, particularly where the movant advances no sound reason or reasonable explanation other than "mere inadvertence" for a delayed jury request.  See Personal Touch, Inc. v. Lenox, Inc., 122 F.R.D. 470, 471-72 (E.D. Pa. 1988).  Therefore, the Court will turn to the final two Infinity Group factors, namely, the length of the delay in seeking the jury designation and the reasons for the failure to make a timely demand.  In this case, these two factors seem not only intertwined but, in tandem, they fatally undermine FSA's position.

FSA started this litigation 14 months ago, during which time there have been no less than 11 court-related events when true "inadvertence" or lack of focus could have been or should have been overcome, and some action could have been taken to make a jury trial demand if one had really been intended. Those milestones were: (1) filing of the writ of summons (January 2005); (2) filing of the complaint (February 2005); (3) removal to federal court (February 2005); (4) Hess answer to complaint (March 2005); (5) Rule 16 conference (April 2005); (6) issuance of Scheduling Order (May 2005); (7) counsel's correspondence to the Court (September 2005); (8) order from the Court concerning notification of possible new counsel (December 2005); (9) entry of appearance by new counsel (December 2005); (10) status conference with newly assigned Court to discuss scheduling (January 2006); and (11) issuance of Scheduling Order (January

2006). Even if conventional notions of professional responsibility did not dictate communicating with the client prior to or following these various events during which the jury/non-jury issue could or would have been a natural topic to consider, any one of them would or should have prompted even the most distracted lawyer to give some fleeting thought to this case and the relatively modest amount of time and effort needed to compose and communicate a jury demand.

      The Court simply cannot accept the self-portrait Mr. Notturno verbally paints in his affidavit that he was something akin to a deer immobilized by the headlights of a departing colleague, personnel changes at an ancillary business and considering a new professional affiliation. It is not without significance that a number of the case events recounted above occurred prior to the occurrence of the supposedly unnerving troubles that Mr. Notturno recounts in his affidavit. The conference with the previous presiding judge in April 2005, and the ensuing Order would have been an occasion when the Court personally put counsel on notice that there was no jury demand here. See, e.g., Ballas v. City of Reading, 2001 U.S. Dist. LEXIS 7966 (E.D. Pa. June 12, 2001). Moreover, noticeably absent from his affidavit is any mention of his colleague, Tracy Thomas Cadzow, who, after all, was the lawyer who filed the writ of summons for FSA, served the writ on Hess, filed the complaint for FSA and, along with Mr. Notturno, entered an appearance as FSA's counsel in federal court. Perhaps the silence as to the role of Attorney Cadzow bespeaks a certain professional gallantry on the part of Mr. Notturno, but not acknowledging the availability of another lawyer - - one who had actually worked on this case - - and then not explaining why Tracy Cadzow could not have rectified the supposedly inadvertently overlooked jury demand leaves a large and loud gap in the apologia being offered in support of the motion.

Finally, the Court will not leave unaddressed the troublesome issue of the role supposedly played in this drama by the conflict of interest that Mr. Notturno suggests caused him to cease "proactive activity" as FSA's counsel.  Even if the Court accepted the assertion that a potential conflict arose that was so debilitating some four months before Mr. Notturno joined McNees, and also accepted the unspoken suggestion that filing a jury demand (or having Tracy Thomas Cadzow or some other colleague do so) would constitute "proactive activity", counsel's sensitivities to a conflict of interest are difficult to assess when one considers that if the conflict existed in the spring of 2005, it surely must have become more pronounced in August 2005 and thereafter when Mr. Notturno actually joined McNees, and yet Mr. Notturno did not then withdraw as FSA's counsel.  It is difficult to see how the Court can find Mr. Notturno's explanations based upon the alleged conflict of interest efficacious at all when one looks at the docket in this case and sees that Mr. Notturno (and Tracy Thomas Cadzow) remains on the docket as one of FSA's counsel in this Court.

Reviewing the information made available to the Court, and in spite of Mr. Notturno's willingness to publicly shoulder blame now, the overall picture suggests that, until perhaps very recently, there never was any actual decision to pursue this case as a jury case.  Mr. Notturno may not be as deserving of blame as he has described himself, and in light of the foregoing, the jury that was out on the question of whether there is merit to FSA's Motion will remain out.  The Motion will be denied by way of the accompanying Order.

        BY THE COURT:

        <u>S/Gene E.K. Pratter</u>
        GENE E.K. PRATTER
        *United States District Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FSA GROUP, INC., | : | CIVIL ACTION |
| FISHER MANAGEMENT COMPANY, | : | |
| AND J. HERBERT FISHER, JR. | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | NO. 05-809 |
| | : | |
| AMERADA HESS CORPORATION | : | |
| Defendant | : | |

**ORDER**

AND NOW this 26th day of April, 2006, upon consideration of Plaintiffs' Motion for a Trial By Jury (Docket No. 16) and the Response thereto (Docket No. 17), it is hereby ORDERED that Plaintiffs' Motion is DENIED and the case shall proceed in accordance with the schedule set forth in the Court's January 6, 2006 Scheduling Order (Docket No. 15).

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
*United States District Judge*