**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FSA GROUP, INC.,** | : | **CIVIL ACTION** |
| **FISHER MANAGEMENT COMPANY,** | : | |
| **AND J. HERBERT FISHER, JR.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AMERADA HESS CORPORATION,** | : | |
| **Defendant** | : | **NO. 05-809** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                                                   JUNE 27, 2007


The FSA Group, Inc., Fisher Management Company and J. Herbert Fisher, Jr.

(collectively, "Plaintiffs") sued the Hess Corporation ("Hess"), formerly known as Amerada Hess

Corporation, pursuant to the Pennsylvania Storage Tank and Spill Prevention Act ("STSPA"), 35

P.S. §§ 6021.101 *et seq.*, (Count I) and for negligence, trespass and nuisance (Counts II, III and

IV, respectively) to recover damages arising out of the alleged contamination of the Plaintiffs'

property.  Following discovery, Hess now moves for summary judgment solely on the ground

that the Plaintiffs' claims are time-barred, which the Plaintiffs dispute.  Although the limitations

period applicable to the common law claims is not open to dispute, the statute of limitations to

apply to the statutory claim is a matter that the Pennsylvania legislature has left open to judicial

discussion, a discussion that has certainly not been in a single voice.  For the reasons discussed

more fully below, the Court will grant summary judgment in favor of the Defendants on the

Plaintiffs' common law claims in Counts II, III and IV; but the Court will deny summary

judgment on the Plaintiffs' STSPA claims in Count I.

**FACTUAL BACKGROUND**

The following facts are uncontested.

During 2002 and 2003, the Rockvale Group, a Pennsylvania limited partnership owned by Mr. Fisher, owned Rockvale Square Outlet Center, a shopping center in Lancaster County. (Compl. ¶¶ 1, 6.)  Mr. Fisher also was the sole owner of the two other plaintiff entities in this action, FSA Group, Inc. and Fisher Management Company.  (Id. at ¶¶ 2, 4.)  During all relevant time periods, Hess owned a retail gas station located across the street from the northeast corner of the 64-acre Rockvale Square property.  (Id. at ¶¶ 10, 22.)

On November 15, 2002, the Plaintiffs signed a Purchase and Sale Agreement pursuant to which they agreed to sell Rockvale Square to Tanger Properties Limited Partnership ("Tanger") for $77,500,000.  (Compl. ¶ 20; Def. Mot. Ex. 3, Tanger Agreement.)  The Tanger Agreement granted Tanger the right to conduct due diligence concerning the premises and to terminate the proposed transaction without cause before the end of the due diligence period set forth in the Agreement.  (Def. Mot. Ex. 3, Tanger Agreement at § 1.6.)  Accordingly, Tanger under took various due diligence steps from November 15, 2002 through January 30, 2003.  In addition to investigating economic issues, Tanger retained ATC Associates, Inc. to conduct a Phase I Environmental Site Assessment ("ESA") of the Rockvale Square property.  (Compl. ¶ 21.)

ATC delivered a draft of its Phase I ESA to Tanger on December 16, 2002 and Tanger forwarded a copy to the Plaintiffs shortly thereafter.  (Def. Mot. Ex. 1, Notturno Dep. 130-32; Def. Mot. Ex. 5, Phase I ESA.)  The Phase I ESA identified as a potential concern environmental contamination related to former underground storage tanks that previously had been removed from the adjacent Hess gas station, and recommended a follow-up Phase II investigation.  (Def.

2

Mot. Ex. 5, Phase I ESA at ii, 32, 34.)  At Tanger's request, the Plaintiffs agreed to have ATC conduct the recommended Phase II soil and groundwater sampling, a task that was completed on January 2, 2003.  (Def. Mot. Ex. 2, Fisher Dep. 318-19.)

On January 7, 2003, ATC faxed the preliminary results of its soil and groundwater testing to the two attorneys representing the Plaintiffs in the sale transaction, Ken Notturno and Doug Goss, reporting that gasoline constituents were detected at a level exceeding the Pennsylvania Department of Environmental Protection's ("PDEP") clean-up standards.  (Def. Mot. Ex. 6, Auerbach Dep. 70-73; Def. Mot. Ex. 7, Jan. 7, 2003 Fax.)  The following day, on January 8, 2003, ATC sent a second fax to Messrs. Notturno and Goss, attaching ATC's final sampling results, which confirmed the presence of groundwater contamination related to the nearby Hess gas station.  (Def. Mot. Ex. 8, Jan. 8, 2003 Fax.)  It is uncontested that Mr. Fisher learned of the alleged contamination on his property on January 8, 2003.[1]

Mr. Notturno sent a letter regarding the ATC sampling results to Tanger's attorney, Joyce Garrett, on January 14, 2003.  (Def. Mot. Ex. 12, Jan. 14, 2003 Letter to Garrett.)  Approximately two weeks later, on January 30, 2003, Tanger terminated its proposed purchase of Rockvale Square without explanation.  (Def. Mot. Ex. 4, Tanger Dep. 59.)[2]  The Plaintiffs subsequently

---

[1] In the Complaint, the Plaintiffs state that Mr. Fisher learned about the alleged environmental contamination of the Rockvale Square property on January 12, 2003 (as opposed to January 8).  (Compl. ¶ 26.)  The January 12 date, if accurate, would have extracted this case from any statute of limitations battle.  Under fire from Hess, the Plaintiffs now describe this January 12 averment as a "mistake" (Pl. Response to State of Undisputed Facts ¶¶ 43, 46), and admit that Mr. Fisher learned of the contamination on his property on January 8, 2003 (id. at ¶¶ 43, 44).

[2] The parties dispute whether Tanger terminated the transaction primarily because of economic issues or environmental issues.  (See Def. Statement of Undisputed Facts and Pl. Response, ¶¶ 8, 23-26.)  This debate, however, is pertinent to causation, not to the statute of

entered into a letter of intent to sell Rockvale Square to a different buyer for $72,750,000, which provided that the buyer could terminate the transaction after conducting due diligence but could not, as a result of its due diligence, reduce the price in any fashion.  (Def. Mot. Ex. 15, March 25, 2003 Letter, pp. 1, 3.)  The Plaintiffs signed an agreement of sale with that new buyer in December 2003 for $71,000,000,[3] and, after Hess provided an indemnification agreement on February 20, 2004, the transaction closed on March 25, 2004.  (Compl. ¶¶ 31, 35; Pl. Response Ex. I.)

Notwithstanding various letters from the Plaintiffs to Hess demanding damages and threatening litigation (see Def. Mot. Exs. 14, 16, 18), no legal action was undertaken in 2004. On January 12, 2005, the Plaintiffs filed a Writ of Summons against Hess in the Lancaster County Court of Common Pleas.  (Def. Mot. Ex. 19, Writ of Summons; Def. Mot. Ex. 20, Lancaster County Docket.)  The Plaintiffs filed the Complaint against Hess on February 16, 2005.  (Def. Mot. Ex. 23, Lancaster County Docket.)  Hess properly removed the case to this Court based on diversity jurisdiction.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

limitations issue now before the Court.  Hess does not move for summary judgment on any other ground beyond the assertion that the Plaintiffs' claims are time-barred.

[3] Mr. Fisher apparently reduced the purchase price because, during the course of the buyer's due diligence activities, a significant tenant at the shopping center property had filed for bankruptcy, an issue entirely irrelevant to this suit.  (Pl. Response to Statement of Undisputed Facts, ¶ 30.)

4

matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. Evidence properly provided by the nonmovant is to be believed, and the court must draw all reasonable and justifiable inferences in the nonmovant's favor. Id. at 255.

**DISCUSSION**

Hess moves for summary judgment solely on the ground that the Plaintiffs' claims are time-barred. It is uncontested that the Plaintiffs learned of the alleged contamination on January 8, 2003. The parties also agree that the statutes of limitations began to run on that date. Thus, the Court must determine the appropriate limitations period to apply to each claim and then evaluate whether that period had expired when the Plaintiffs filed the Writ of Summons on January 12, 2005.

**A.      The Plaintiffs' Common Law Claims**

The Plaintiffs sued Hess for negligence, trespass and nuisance (Counts II, III and IV, respectively). In pertinent part, Pennsylvania's two-year statute of limitations applies to:

> Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa. C.S. § 5524(7).[4] The Plaintiffs' common law claims for negligence, trespass and nuisance

---

[4] This case is before the Court based on diversity jurisdiction and, accordingly, the Court must apply the substantive law of the state in which it sits. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); In re Asbestos Litig., 829 F.2d 1233, 1237 (3d Cir. 1987). Statutes of limitations

seek recovery for damages to property and are based on alleged tortious conduct.  Therefore, these claims are subject to Pennsylvania's two-year statute of limitations.  See Dombrowski v. Gould Elecs., Inc., 954 F. Supp. 1006, 1013 (M.D. Pa. 1996) (applying Pennsylvania's two-year statute of limitations to negligence, trespass and nuisance claims); Crisante v. J.H. Beers, Inc., 443 A.2d 1150, 1153 (Pa. Super. Ct. 1982) (holding that Pennsylvania's two-year statute of limitations applies to "actions alleging intentional or negligent infliction of damages to personal property").

The Plaintiffs initiated this suit on January 12, 2005, when they filed a writ of summons. Under Pennsylvania law, the filing of a writ of summons effectively stops the running of any applicable statute of limitations period.  Pa. R. Civ. P. 1007.  Here, it is indisputable that any two-year statute of limitations had run as of January 8, 2005.  Therefore, there is no genuine issue of fact as to whether the Plaintiffs' claims for negligence, trespass and nuisance are time-barred, and the Court will grant summary judgment on these claims in favor of Hess.

### B.     The Plaintiffs' STSPA Claims

The statute of limitations issue is decidedly less straightforward as to the STSPA claim. The STSPA authorizes private citizens to bring an action pursuant to Section 6021.1305 of the law, which provides that

> any person having an interest which is or may be affected may
> commence a civil action on his behalf to compel compliance with this
> act or any rule, regulation, order or permit issued pursuant to this act
> by any owner, operator, landowner or occupier alleged to be in

---

are considered substantive law for purposes of the Erie doctrine.  Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 160-161 (3d Cir. 2001) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)).  Therefore, the Court must apply Pennsylvania law to determine the applicable statute of limitations.

> violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act.

35 P.S. § 6021.1305(c).  The Pennsylvania Supreme Court has determined that this provision is not limited to private suits to "compel compliance" but also authorizes private suits for money damages.  See Centolanza v. Lehigh Valley Dairies, Inc., 658 A.2d 336, 340 (Pa. 1995) (holding that "under Section 6021.1305, a private cause of action may be brought to collect costs for cleanup and diminution in property value").  Here, the Plaintiffs seek damages for, *inter alia*, diminution in value of the Rockvale Square property and lost profits from the termination of the Tanger Agreement, both allegedly caused by the release of contaminants from Hess's underground storage tanks in violation of the STSPA.  (Compl. ¶¶ 35-48.)

The task presented to the Court is to apply the appropriate limitations period for private actions brought pursuant to the STSPA.  Contending that a two-year statute of limitations applies to STSPA private actions, Hess argues that the Plaintiffs' STSPA claims are time-barred.  The Plaintiffs counter that the STSPA's 20-year limitations period, which *explicitly* applies only to actions for criminal and civil penalties, also applies to private actions.

Without assuming a legislative mantel or engaging in a public policy discourse to lecture the legislature as to what it should do or should have done, the Court must first determine whether the STSPA provides a limitations period for actions brought by private individuals, and, if so, what that period is.  The Pennsylvania Supreme Court has not ruled on this issue.[5]  The

---

[5] When the highest court of the forum state has not addressed an issue of law, a federal court sitting in diversity "must forecast the position the supreme court of the forum would take on the issue."  Clark v. Modern Group, 9 F.3d 321, 326 (3d Cir. 1993).  When making this prediction, the task is an arduous one, and the Court should "consider relevant state precedents, analogous decision, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  Packard

courts that have addressed this question have reached three different conclusions, one ultimately applying the 20-year limitations period set forth in Section 1314 of the STSPA, another Pennsylvania's two-year statute of limitations for actions sounding tort, 42 Pa. C.S. § 5524(7), and yet another Pennsylvania's six-year, catch-all statute of limitations set forth in 42 Pa. C.S. § 5527.

### 1.    Does the STSPA Provide a Limitations Period for Private Actions?

The Pennsylvania Supreme Court has applied the principles of Pennsylvania's Statutory Construction Act, 1 P.S. § 1921, to guide its interpretation of the STSPA.  See Centolanz, 658 A.2d at 339.  In particular, under the Statutory Construction Act, "[t]he object of all statutory interpretation is ascertaining and effectuating the intention of the General Assembly."  Id. (citing 1 P.S. § 1921(a)).  To that end, the Statutory Construction Act provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 P.S. § 1921(b); Centolanza, 658 A.2d at 339.

Here, nothing in the language of the STSPA explicitly provides a limitations period for private actions brought under Section 1305(c).  See 35 P.S. §§ 6021.101 et seq.  Indeed, the STSPA provides only one limitations period, and that lone provision explicitly applies only to actions for civil and criminal penalties.  See 35 P.S. § 6021.1314 ("The provision of any other statute to the contrary notwithstanding, *actions for civil or criminal penalties* under this act may be commenced at any time within a period of 20 years from the date the offense is discovered.")

v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993).  The analysis should also include decisions of state intermediate appellate courts, as well as other state court decisions on the issue. See Ciccarelli v. Carey Canadian Mines, 757 F.2d 548, 533 n.3 (3d Cir. 1985); Nelson v. State Farm Mut. Auto. Ins. Co., 988 F. Supp. 527, 529 (E.D. Pa. 1997).

(emphasis supplied).  Because this is the *only* limitations period provided by the General

Assembly in the STSPA, the parties here have squared off on the issue of whether the same

period applies to private actions in addition to actions brought by the government for "civil and

criminal penalties."

Where, as here, a statute is not explicit, the Statutory Construction Act provides that

courts should attempt to ascertain the intention of the General Assembly by

considering, *inter alia*, the following factors:

> (1) The occasion and necessity for the statute;
> (2) The circumstances under which it was enacted;
> (3) The mischief to be remedied;
> (4) The object to be attained;
> (5) The former law, if any, including other statutes upon the same or
> similar subjects;
> (6) The consequences of a particular interpretation;
> (7) The contemporaneous legislative history; and
> (8) Legislative and administrative interpretations of such statute.

1 P.S. § 1921(c).

> **a.    Factors 1-4: Occasion and Necessity for the Statute,**
> **Circumstances of Enactment, Mischief to be Remedied, and**
> **Object to be Attained**

The General Assembly enacted the STSPA to protect the health and safety of the

Commonwealth's residents as well as natural resources, as set forth in Section 6021.102:

> (1) The lands and waters of this Commonwealth constitute a unique
> and irreplaceable resource from which the well-being of the public
> health and economic vitality of this Commonwealth is assured.
> (2) These resources have been contaminated by releases and ruptures
> of regulated substances from both active and abandoned storage
> tanks.
> (3) Once contaminated, the quality of the affected resources may not
> be completely restored to their original state.

(4) When remedial action is required or undertaken, the cost is extremely high.
(5) Contamination of groundwater supplies caused by releases from storage tanks constitutes a grave threat to the health of affected residents.
(6) Contamination of these resources must be prevented through improved safeguards on the installation and construction of storage tanks.

35 P.S. 6021.102(a).  Declaring these storage tanks to be "a threat to the health and safety of [the] Commonwealth," the General Assembly enacted the STSPA "to prevent the occurrence of these releases through the establishment of a regulatory scheme for the storage of regulated substances in new and existing storage tanks *and to provide liability for **damages** sustained within this Commonwealth as a result of a release and to require prompt cleanup and removal of such pollution and released regulated substances.*"  35 P.S. 6021.102(b) (emphasis supplied).

### b.    Factors 5, 7, 8: Former Law and Similar Laws, Legislative History, and Legislative and Administrative Interpretations

Even if one were to credit legislative history for the purposes of the present task, the legislative history of the STSPA reveals little about the intended limitations period for private actions.  The STSPA was originally introduced in the General Assembly as Senate Bill No. 280.  (See Def. Reply Ex. B, S.B. 280, 1989 Reg. Sess., Printer's No. 287 (Pa. 1989).)  After passing through the Senate, the Bill was referred to the House Committee on Conservation.  Id. at No. 555.  At that time, the limitations provision was in a section titled "Civil Penalties."  Id. at 555, § 1103.  That section read: "Notwithstanding any other provision of law to the contrary, there shall be a statute of limitations of *seven years* upon actions *brought by the Commonwealth* under this *section*."  Id. at § 1103(d) (emphasis supplied).  The House Committee on Conservation revised Senate Bill No. 280 and the amended version was enacted as the STSPA.

Among other changes not germane to this discussion, the House revisions established a private cause of action and also almost tripled the term of the statute of limitations.  The House moved the language setting forth the limitations period to its own section, titled "Limitations," and changed the language to explicitly cover both criminal and civil penalties.  See 35 P.S. § 6021.1314.  The House also deleted the language referencing actions "brought by the Commonwealth," and changed the limitations period to 20 years.  Id.  As enacted, the law thus provides: "The provisions of any other statute to the contrary notwithstanding, actions for civil or criminal penalties under this *act* may be commenced at any time within a period of *20 years* from the date the offense is *discovered*.[6]"  Id. (emphasis supplied).  Other additions in the revised statute permit the Department of Environmental Resources to delegate its authority under the Act, including its authority to assess and collect civil penalties, to other Commonwealth agencies, federal agencies, counties, joint county authorities and multimunicipal authorities.  See id. at §§ 107(a), 1307(b), 1312.

The Plaintiffs here contend that these changes demonstrate that the General Assembly intended to expand the scope of the Act in order to permit private actions and to include all STSPA actions under the 20-year limitations period.  In particular, the Plaintiffs assert that the deletion of the phrase "brought by the Commonwealth" and the substitution of the phrase "this act" for "this section," suggest that the General Assembly intended the limitations period set forth in Section 1314 to apply to private actions under Section 1305(c).  This argument may well be bolstered by the facts that the STSPA contains no other limitations period, and that the House

_____

[6] Notably, the legislature chose the more indulgent date-of-discovery trigger, suggesting an inclination to permit a longer opportunity to sue than would be permitted by using an occurrence date trigger.

11

simultaneously added an express private cause of action when it expanded the single limitations period.

In contrast, Hess asserts that the deletion of the phrase "brought by the Commonwealth" was necessary to account for the other revisions, which permitted actions by governmental entities other than "the Commonwealth." See 35 P.S. §§ 107(a), 1307(b), 1312. This analysis would also account for the substitution of "this act" for "this section." Moreover, argues Hess, the explicit limited operative clause, to wit, "actions for civil and criminal penalties," belies any purported legislative intention to apply the designated 20-year limitations period to the entire act, or, presumably, any and all actions. An analogous provision in the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101-6020.1305, illustrates this principle and demonstrates how easily legislative intent to provide what the Plaintiffs here seek could have been accomplished. The limitations provision in the HSCA explicitly provides a 20-year statute of limitations for "actions for civil and criminal penalties under this act *or civil actions*." Id. at § 6020.1114 (emphasis supplied).

### c.     Factor 6: Consequences of a Particular Interpretation

Arguably, limiting the 20-year limitations period solely to actions for civil and criminal penalties may well raise more questions than it answers. Indeed, a refusal to invoke the 20-year period here may stymy the very purpose of permitting private actions under a remedial statute such as the STSPA.

A restrictive determination that the 20-year limitations period applies only for civil and criminal "penalties" begs the question of what limitations period, if any, applies to the other causes of action permitted by the STSPA, inasmuch as there is no other limitations period

12

included in the statute.  Because there are many different causes of actions encompassed in the STSPA, looking beyond the statute to analogous causes of action could result in application of at least three different limitations periods for actions brought pursuant to the STSPA (the 20-year period for "civil and criminal penalties," the two-year period for actions sounding in tort, and additional limitations periods for other types of actions).  For example, the Commonwealth and private citizens can bring actions to compel owners or operators to register their tanks, § 6021.503(a); to pay annual registration fees, § 6021.501(a)(1); to obtain permits and pay fees for those permits, § 6021.504; to demonstrate financial responsibility for releases, § 6021.701; to take corrective action after an order of the DER, § 6021.1302; to comply with regulations for use and operation of the tanks, § 6021.501; and to cease a public nuisance, § 6021.1304.  See 35 P.S. 6021.101 *et seq.*; Mistick v. Liss, 57 Pa. D. & C. 4th 233, 238 (Pa. Com. Pl. 2002) (listing causes of action available under the statute to both the Commonwealth and private citizens).

In addition, disparate limitations periods for actions brought by the Commonwealth and by private citizens could allow property owners to easily avoid a private action.  For example, Section 1305 precludes private actions "if the DEP has commenced and is diligently prosecuting a civil action in a court of the United States or of the Commonwealth or is in litigation before the Environmental Hearing Board to require the alleged violator to comply with [the STSPA] or any rule, regulation, order or permit issued pursuant to [the STSPA]." 35 P.S. § 6021.1305(c).  Thus, if PDEP has not yet brought a civil action, or brings a civil action but does not diligently prosecute it, a private actor may step into the shoes of the Commonwealth and take action to compel compliance.  Subjecting the Government and private citizens to different limitations periods enables a polluter to comply with a Commonwealth directive only for so long as a private

actor could bring an action; thereafter, if the Commonwealth cannot or will not pursue the matter, the alleged polluter would be home-free, and private citizens would no longer play their statutorily designated role of supplementing enforcement.[7]  This result does not honor the purpose of the STSPA, that is, "to fully protect the public health, welfare and safety of the residents" of Pennsylvania, which was directly served by the creation a private cause of action. With the judicial imposition of the shortest limitations period on private actions, private citizens often would be unable to take action where the Government failed to do so, and the statute's clear remedial purpose would not be effectively served.  See 35 P.S. § 6021.1305.  See also footnote 6, supra.

Granted, this is the *intended* effect of any statute of limitations – to procedurally bring to an end the right to file and pursue a lawsuit.  Moreover, argues Hess, the statutes of limitations for actions brought by the Government are often longer than those for private actions.  Here, however, there is no legislative declaration of such a public-private discrepancy, no explicit statute of limitations governing private actions, and the limitations periods of analogous causes of actions are significantly shorter, e.g., two years (torts), and only one-tenth the time period outlined in the statute.

**d.      Interpretations of the Pennsylvania Supreme Court**

As noted above, absent an opinion from the state's highest court pertaining to a matter of

---

[7] The Court notes that, under the express operation of the STSPA, a two-year (24-month) limitations period applied to STSPA claims would effectively result in a shorter, 22-month limitations period because according to the procedures required by the STSPA, a prospective private plaintiff may not commence an action "prior to 60 days after the plaintiff has given notice, in writing, of the violation to the department and to any alleged violator."  35 P.S. § 6021.1305.  Thus, a putative private plaintiff would have to take the mandatory prerequisite first step at least two months before the statute of limitations would otherwise normally expire.

state law, the Court must endeavor to predict how the state's highest court would rule on the matter if confronted with it.  Clark, 9 F.3d at 326.  While the Pennsylvania Supreme Court has not decided what limitations period applies to private actions under the STSPA, it has recognized an effort on the part of the General Assembly to avoid differentiating between actions brought by the Commonwealth and those brought by private citizens under the STSPA.  See Centolanzo, 658 A.2d at 341 ("a private action brought under the STSPA *is no different* than one brought by the Commonwealth") (emphasis supplied).

Moreover, this Court cannot ignore that the Pennsylvania Supreme Court has emphasized that, because it is a remedial statute, the STSPA must be "liberally construed."  Centolanza, 658 A.2d at 340 (holding that private citizens may bring an action under the STSPA to recover costs for cleanup and diminution in property value even though there is no provision in STSPA expressly providing for such actions).  Pennsylvania's Superior Court has taken this cue as well. See Wack v. Farmland Indus., Inc., 744 A.2d 265, 268 (Pa. Super. Ct. 1999) (holding that individuals may bring actions for personal injuries under the STSPA even though such actions are not expressly provided for in the STSPA) (citing Centolanza), abrogated on other grounds by Trach v. Fellin, 817 A.2d 1102 (Pa. Super. Ct. 2003); Krebs v. United Ref. Co., 893 A.2d 776, 786 (Pa. Super. Ct. 2006) (remedial statute requires that "any ambiguous language contained therein be construed "liberally" in order to effectuate the legislative intent") (citing Centolanza). This mandate echos the text of the statute itself, which provides, "[t]his act and the regulations promulgated under this act shall be liberally construed in order to fully protect the public health, welfare and safety of the residents of this Commonwealth."  35 P.S. § 6021.109.

In Buttzville v. Gulf Oil Corp., 25 Pa. D & C 4th 172 (Pa. Com. Pl. Jan. 26, 1995), the

Lancaster County Court of Common Pleas held that the 20-year statute of limitations applies to private actions.  Id. at 178.  That court's reasoning was three-fold.  As an initial matter, the court noted that the STSPA contained no other limitations period and focused on the mandate of the Pennsylvania General Assembly that the STSPA should be "'liberally construed.'"  Id. at 176 (quoting 35 P.S. § 6021.109).  The court thus reasoned that a narrow application of the 20-year limitations period set forth in Section 1314 would undermine legislative intent and, therefore, held that it was

> logical to assume that the General Assembly intended the 20 year limitation for the 'civil or criminal penalties' mentioned in section 6021.1314 to apply to private actions, especially since the STSPA provides no other limitation on actions and since the General Assembly intended the STSPA to be liberally construed to fully protect the health, welfare and safety of Pennsylvania's residents.

Id. at 176-177.  The court also noted the Pennsylvania Superior Court's "effort to avoid differentiating a private action from one brought by the Commonwealth under the STSPA."  Id. at 177 ("[B]ecause an action by a private person is no different than one brought by the Commonwealth under the act," presumptions and recoveries available to the Government are "equally available" in a private action.) (citing Centolanza v. Lehigh Valley Dairies, 635 A.2d 143, 149-150 (Pa. Super. Ct. 1993), aff'd, 658 A.2d 336 (Pa. 1995)).  Finally, finding it "nonsensical that the General Assembly" would intend such disparate limitations periods for actions brought by the Government and private actors, the court concluded that the STSPA provides a 20-year statute of limitations for private actions.  Id. at 177-78 (noting that a two-year limitation for a private action would not "protect the health, welfare and safety of Pennsylvania's

residents as fully as the General Assembly intended").[8]

The Court of Appeals for the Third Circuit has espoused similar reasoning under analogous circumstances.  Determining the applicable limitations period for actions brought by private plaintiffs under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*, the court of appeals held that "[s]ince plaintiffs in a citizen suit are acting as an adjunct to government enforcement actions, citizens should be subject to the same limitations period as the government."  Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 74 (3d Cir. 1990).  Because the Water Pollution Control Act, like the STSPA, "envisions a scheme whereby citizen suits supplement government efforts," applying a different statute of limitations to those suits "could frustrate this scheme by allowing citizens to bring suits where the government would be barred or vice versa."  Id.  This reasoning applies with equal force in the present case.

### 2.    If the Statute is Silent, What is the Applicable Statute of Limitations?

Two courts faced with this dilemma have rejected the 20-year limitations period, using different tests to determine which statute of limitations should apply.

First, the federal district court for the Middle District of Pennsylvania applied Pennsylvania's two-year statute of limitations to STSPA private actions.  In Two Rivers Terminal v. Chevron USA, Inc., 96 F. Supp. 2d 432 (M.D. Pa. 2000), the court rejected the

---

[8] See also Boas v. Getty Properties Corp., et al., No. CI-03-01693 (Pa. Com. Pl. 2006) (holding that a 20-year statute of limitations period applies to private actions under the STSPA); Ziegler v. Lynn, 33 Pa. D. & C. 4th 143, 163 (Pa. Com. Pl. 1996) (noting that the STSPA "sets forth its own limitation period" providing that "actions for penalties under this act may be commenced within 20 years of the date the offense is discovered" and implying that this limitations period also applies to private actions).

arguably policy-oriented approach followed by <u>Buttzville</u> and instead looked to analogous causes

of action to determine the appropriate limitations period.  <u>Id.</u> at 437 n.3 (assuming without

deciding that under Pennsylvania law, when no statute of limitations explicitly controls, courts

should look to analogous causes of action to find the limitations period).  Reasoning that the

STSPA's "citizen-suit provision authorizes what can best be described as a tort claim akin to a

common-law claim for nuisance," the court concluded that "a private [STSPA] claim is

essentially a tort."  <u>Id.</u> at 440.  Indeed, the STSPA provides that a violation of the Act can be

abated as a nuisance.  35 P.S. § 6021.1305(a).  To be sure, a common law cause of action for

nuisance is a tort.  <u>Golen v. Union Corp.</u>, 718 A.2d 298, 300 (Pa. Super. Ct. 1998).  Having thus

determined that the STSPA is essentially a tort, the <u>Two Rivers Terminal</u> court looked to 42 Pa.

C.S. § 5524(7), which provides the statute of limitations for actions sounding tort.  Section

5524(7) provides a two-year statute of limitations for "[a]ny other action or proceeding to recover

damages for injury to person or property which is founded on negligent, intentional, otherwise

tortious conduct or any other action or proceeding sounding in trespass."  42 Pa. C.S. § 5524(7).

Because "[a] private action under section 6021.1305(c) fits this description," that court held that

the two-year limitations period applies to private claims brought under the STSPA.  <u>Id.</u> at 440.

<u>See also</u> <u>Shooster v. Amoco Oil Co.</u>, 2001 WL 882971, at *4 (E.D. Pa. April 26, 2001)

(applying, without discussion, a two-year statute of limitations to private claims brought pursuant

to the STSPA).

   Two years after the <u>Two Rivers Terminal</u> case, the Allegheny Count Court of Common

Pleas applied instead Pennsylvania's six-year statute of limitations to private actions brought

pursuant Section 6021.1305.  <u>See</u> <u>Mistick</u>, 57 Pa. D. & C. 4th at 243.  Using a narrower approach

than that followed in Two Rivers Terminal, the court looked to whether "*each claim that may be raised* in a private action under [the STSPA] resembles an action to recover damages for injury to persons or property founded on negligent, intentional, or otherwise tortious conduct or other actions or proceedings sounding in trespass," i.e., actions covered by the two-year statute of limitations set forth in Section 5524(7).  Id. at 235 (emphasis supplied) (citing Gabriel v. O'Hara, 534 A.2d 488 (1987)).

Rejecting the Two Rivers Terminal holding, the Mistick court determined that "the scope of the claims that may be raised under [the STSPA] exceed the scope of 42 Pa. C.S. § 5524(7)." Id. at 243.  Holding that the two-year statute of limitations set forth in Section 5524(7) should not apply to claims that may be raised under Section 6021.1305 that cannot be characterized as an action "to recover damages for injury to person or property" that is founded "on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass," the court settled on Pennsylvania's six-year, "catch-all" statute of limitations.  Id. at 238, 243-46. Because the plaintiffs "apparently agee[d] with the ruling of the court in Two Rivers Terminal that the 20-year limitation period set forth in 35 P.S. § 6021.1314 refers only to proceedings instituted by the Commonwealth to recover civil or criminal penalties," the Mistick court did not reach the issue of whether the 20-year limitations period applies to private actions.  Id. at 244.

While it may be true that the STSPA is largely about preventing and remedying pollution, a public nuisance, upon close analysis it appears that the STSPA differs significantly from common law torts in notable ways.  For example, by establishing a rebuttable presumption of liability, the statute shifts the burden of persuasion to the defendant to overcome this presumption "by clear and convincing evidence."  35 P.S. § 6021.1311(a).  In addition, the

statute seeks to protect the public as a whole, rather than a single individual, and thus reaches beyond narrow disputes between individuals.  See id. at § 6021.102(a).  Finally, as previously discussed, because not every claim available under the STSPA sounds in tort or is analogous to a tort, it is sensible for the statute to set forth its own limitations period and for this period to apply to the statute as a whole.

In sum, while it is objectively an undeniably indulgent length of time, a 20-year statute of limitations for all actions – including private actions – brought pursuant to the STSPA better serves the statute's stated remedial goals and is consistent with the Pennsylvania courts' consistently liberal construction of the statute.  Moreover, the STSPA provides no other limitations period, and for the courts to do so risks the application of multiple, disparate statutes of limitations to the various provisions of the STSPA in contravention of its remedial purposes.  Such a scheme would also encourage parties to artificially configure the contours of claims or defenses based upon the desired limitations period rather than the most appropriate conduct or circumstance presented by the facts.  While the Government is often afforded a long limitations period, the Pennsylvania Supreme Court has unequivocally determined that "a private action brought under the STSPA is no different than one brought by the Commonwealth."  Centolanzo, 658 A.2d at 341.  Following that guidance, this Court, as it is virtually compelled to do, holds that the 20-year statute of limitations applies to private causes of action under the STSPA.  "'[I]t is not our function to construe a state statute contrary to the construction given it by the highest court of a State.'"  Memorial Hospital v. Maricopa County, 415 U.S. 250, 256 (1974) (quoting O'Brien v. Skinner, 414 U.S. 524 (1974)).

**CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in favor of Hess on the Plaintiffs' common law claims.  However, the Court will deny Hess summary judgment on the Plaintiffs' STSPA claims because those claims are not time-barred under the STSPA's 20-year statute of limitations.


BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FSA GROUP, INC., | : | CIVIL ACTION |
| FISHER MANAGEMENT COMPANY, | : | |
| AND J. HERBERT FISHER, JR., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERADA HESS CORPORATION, | : | |
| Defendant | : | NO. 05-809 |

<u>**ORDER**</u>

AND NOW, this 27th day of June, 2007, upon consideration of the Defendant's Renewed Motion for Summary Judgment (Docket No. 23), the Plaintiffs' response thereto (Docket No. 25), the Defendant's reply (Docket No. 27), the Plaintiffs' surreply (Docket No. 29) and the Defendant's Supplemental Memorandum of Law (Docket No. 36), it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. Summary judgment in favor of the Defendant is GRANTED as to Counts II, III and IV; and

2. Summary judgment is DENIED as to Count I.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge